**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

-------------------------------------------------------x

SOLA BARRY ADEDAMOLA,

                              Plaintiff,

            -v-

CONSTELLATION ENERGY, D/B/A                          Civ. No.:  1:13-cv-11245-JLT
CONSTELLATION NEWENERGY,

                              Defendant.

-------------------------------------------------------x

**DEFENDANT'S MEMORANDUM IN
SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Under Fed. R. Civ. P. 56 and Local Rule 56.1, Defendant Constellation NewEnergy, Inc.
("Constellation") respectfully requests that this Court enter judgment as a matter of law for
Constellation and dismiss Plaintiff Sola Barry Adedamola's ("Adedamola") Complaint in its
entirety with prejudice for the reasons detailed below.

## I. <u>SUMMARY BASIS FOR MOTION</u>

### A. <u>Failure To Promote Claim</u>

In Counts I and II, Adedamola claims Constellation failed to promote him to Vice
President ("VP") positions during 2008 and 2009 because of his race (African-American).
Adedamola did not file a Charge of Discrimination until October 6, 2012. Constellation seeks
summary judgment on this claim because it is time-barred.

### B. <u>Performance Evaluation Claim</u>

In Counts I and II, Adedamola also claims Constellation issued him a "3" rating on his
2011 Performance Evaluation because of his race. Constellation seeks summary judgment on this
claim because: (1) Adedamola admitted he has no facts to support his claim that his race was a

factor in his performance rating; (2) a rating of "Solid Performance" (3 out of 5) is not an adverse employment decision; and (3) the same actors who issued the evaluation also promoted Adedamola a few months earlier.

C.  **Commission And Bonus Claims**

In Counts I, II, V, VII and VIII, Adedamola asserts five causes of action based exclusively on the claim that Constellation failed to pay Adedamola a commission and a bonus related to one contract he allegedly obtained.  In these Counts, Adedamola claims he earned the commission and bonus under the terms of the Business Development Manager ("BDM") Commission Plan because he obtained a "Letter of Intent" between Constellation and the U.S. Department of State ("State Department"). Adedamola admitted the Letter of Intent he obtained did not qualify as a "contract" as defined in the BDM Commission Plan.  Fatal to all five Counts, Adedamola further admitted that, when Constellation eventually executed a qualifying contract with the State Department, Adedamola was employed as a VP and not covered under the BDM Commission Plan.

In Count V, Adedamola alleges Constellation violated the Massachusetts Wage Act ("Wage Act") by not paying him a commission and bonus for obtaining the Letter of Intent. Constellation seeks summary judgment on Count V because Adedamola did not earn this commission or bonus. Further, this bonus was discretionary and therefore outside the scope of the Wage Act.

In Counts I and II, Adedamola alleges Constellation refused to pay him the commission and bonus because of his race. Constellation seeks summary judgment on these claims because: (1) Adedamola did not earn the commission or the bonus as noted above; (2) Adedamola admitted he has no facts to support his claim that race was a factor in this compensation

"decision"; (3) Adedamola's supervisor, Louis Hutchinson, Senior VP ("Hutchinson"), was the key decision-maker regarding these compensation claims, and Hutchinson is the same race as Adedamola; and (4) it is unlikely race was a factor because Hutchinson and Michael Kagan, Senior VP and Chief Sales Officer, promoted Adedamola to VP not long before they denied Adedamola the commission and bonus.

In Count VII, Adedamola claims Constellation breached its duty of good faith and fair dealing by delaying payment of the commission and bonus. Constellation seeks summary judgment on Count VII because Constellation could not be liable for delaying a payment that Adedamola did not earn.

In Count VIII, Adedamola bases his misrepresentation claim exclusively on Hutchinson's alleged assurance that Adedamola's "efforts on the State Department deal would be reflected in [his] 2012 incentive payout." Constellation seeks summary judgment on Count VIII because: (1) the alleged misrepresentation is too vague to be actionable; and (2) Adedamola acknowledged Hutchinson believed the alleged representation was truthful.

**D.  Termination Based On Race Claim**

In Counts I and II, Adedamola claims Constellation terminated his employment because of his race. Constellation seeks summary judgment on these claims because: (1) Constellation had legitimate business reasons to terminate Adedamola's employment based on Adedamola's documented deceit; (2) Hutchinson insisted that Adedamola be terminated for deceiving Hutchinson, and Hutchinson is the same race as Adedamola (African-American); and (3) Hutchinson and the two executives who participated in this decision had also promoted Adedamola from BDM to VP about fifteen months earlier.

### E.  **Retaliation Claims**

In Counts III, IV and VI, Adedamola claims Constellation decided to terminate his employment because he sent a March 7, 2012 e-mail, complaining that his superiors refused to pay him the commission and bonus at issue based on his race. Constellation seeks summary judgment on these retaliation claims because: (1) Hutchinson discovered Adedamola repeatedly had lied to him and recommended immediate termination before Adedamola sent his March 7th e-mail complaint; (2) the March 7th complaint is not protected activity because Adedamola did not articulate any race discrimination complaint in the e-mail; and (3) Adedamola admitted he has no facts to support his claim that Constellation considered his alleged protected activity as a factor in the decision to terminate his employment.

### F.  **Summary Conclusion**

For these reasons, as fully detailed below, Constellation respectfully requests that this Court grant summary judgment and dismiss the Complaint in its entirety.

## II.  ANALYSIS

### A.  **Adedamola's Failure To Promote Claim Is Time-Barred**

Under Title VII and the analogous Massachusetts law ("Chapter 151B"), an employee must file a Charge of Discrimination within 300 days of an alleged failure to promote.  *See* 42 U.S.C. § 2000e-5(e)(1); M.G.L. 151B § 5.

On December 20, 2010, Constellation promoted Adedamola to VP.  (Exhibit 1 – Statement of Undisputed Facts ("SUF") ¶ 1).[1]  Adedamola claims his promotion claim is based on promotion decisions Constellation made during 2008 and 2009. (SUF ¶¶ 2-3).  On October 6, 2012, Adedamola filed his Charge of Discrimination. (SUF ¶ 4).   Constellation made the

---

[1]      In this Memorandum, Constellation will cite to its Statement of Undisputed Facts, attached as Exhibit 1 to this Memorandum, as "SUF ¶ _____."

promotion decisions at issue in Counts I and II almost three years before Adedamola filed his

Charge of Discrimination.

As a matter of law, Adedamola's "failure to promote" claims are time-barred.  For these

reasons, Constellation respectfully requests that this Court grant summary judgment regarding

Adedamola's failure to promote claims in Counts I and II.

### B. Race Was Not A Factor In Adedamola's 2011 Performance Evaluation

#### 1. Adedamola Admitted He Has No Facts To Link His Performance Evaluation To His Race

A plaintiff has the burden to produce evidence to support a claim of discrimination. In

*Bennett v. Boston*, 1988 U.S. Dist. LEXIS 5485, at *9-10 (D. Mass. May 31, 1988), the U.S.

District Court for the District of Massachusetts granted the defendants' motion for summary

judgment, because the plaintiff admitted he had no facts to support his race discrimination claim.

The court reasoned:

> It is well settled in this circuit that mere conclusory allegations are
> insufficient to withstand dispositive motions in civil rights cases if
> no factual support has been provided to the Court. Accordingly,
> those claims alleging discrimination are dismissed.

Adedamola admitted he has no facts to support the alleged connection between his 2011

Performance Evaluation and his race. (SUF ¶ 17). Here, as in *Bennett,* Adedamola failed to carry

his burden to support his race claim.

#### 2. Adedamola's 2011 Performance Rating Does Not Constitute An Adverse Action

A plaintiff has the burden to prove a performance evaluation had an adverse impact on

his/her employment. In *Hall v. FMR Corp.*, 667 F. Supp. 2d 185, 200 (D. Mass. 2009), the court

granted summary judgment because the plaintiff failed to show how she had been adversely affected by an overall evaluation rating of "Proficient."  In doing so, the court observed:

> [Plaintiff] offers no evidence that the evaluation was in fact unwarranted or that she suffered any adverse employment action as a result. Her rating as Proficient (and at times exceeding expectations) had no negative impact on her bonus or compensation. [Her supervisor] indeed lauded certain of Hall's accomplishments.

Adedamola admitted he has no facts indicating his rating of "solid performance" was a factor in any compensation decision. (SUF ¶ 18). Here, as in *Hall,* Adedamola failed to carry his burden to prove he suffered any adverse employment action based on his 2011 Performance Evaluation.

### 3.  The Same People Who Promoted Adedamola Also Determined His 2011 Performance Rating

United States District Courts in the First Circuit recognize a strong presumption that the same person who hired or promoted an employee, knowing the employee's race, would not then take an adverse action against that employee because of the employee's race (the "same actor" inference). In *Mendez-Martinez v. Caribbean Alliance Ins. Co. (CAICO)*, 851 F. Supp. 2d 336, 348 n.8 (D.P.R. 2012), the court dismissed the plaintiff's claim, relying on the "same actor" inference:

> In its analysis of the totality of the circumstances, and despite drawing all inferences in Plaintiff's favor, the Court cannot overlook the "same actor" inference. The First Circuit has implicitly recognized the existence of the "same actor" inference, but it has not weighed in on the issue of the strength of the inference. *See LeBlanc v. Great American Ins. Co*., 6 F.3d 836, 847 (1st Cir. 1993); *see also McMillan v. Mass. Soc'y. for Prev. of Cruelty to Animals*, 140 F.3d 288, 303 n.10 (1st Cir. 1998), cert. denied, 525 U.S. 1104, 119 S. Ct. 870, 142 L. Ed. 2d 772 (1999). . . .  In this case, this Court agrees with the "strong version" (of the "same actor" inference) . . .  no presumption of discrimination applies because the same actor that is allegedly discriminating

6

against Plaintiff on the basis of Plaintiff's age was the same person that hired him, repetitively promoted him, granted salary increases and convinced him on two separate times not to quit his job.

Following a recommendation by Human Resources, Michael Kagan, Chief Sales Officer and Senior VP ("Kagan"), decided to issue Adedamola the "3" rating at issue. (SUF ¶¶ 6-7). The undisputed facts prove Kagan had known Adedamola's race when he approved Hutchinson's request to promote Adedamola to VP at the end of 2010. (SUF ¶¶ 10-11). As in *Mendez-Martinez,* these undisputed facts raise a strong presumption that Kagan did not consider Adedamola's race as a factor in Adedamola's evaluation only a year later.

For these reasons, Constellation respectfully requests that the Court grant summary judgment on Adedamola's discrimination claims regarding his 2011 Performance Evaluation in Counts I and II.

### C. Adedamola's Claims For A Commission And A Bonus Have No Basis In Fact Or Law

Adedamola admitted his only claim for unpaid compensation is that Constellation failed to pay him the commission and bonus he allegedly earned under the BDM Commission Plan for obtaining the November 3, 1010 Letter of Intent with the State Department while he was employed as a BDM. (SUF ¶ 20).

### 1. Count V – Failure To Pay A Commission And A Bonus Under The Wage Act

#### a. Adedamola Did Not Earn A Commission Or A Bonus

The Massachusetts Wage Act only covers commissions that can be "definitely determined" and are "due and payable" to an employee. Mass. Gen. Laws ch. 149, § 148.   In *Scalli v. Citizens Fin. Group, Inc*., 2006 U.S. Dist. LEXIS 7717, at *24 (D. Mass. Feb. 28, 2006), the court granted summary judgment on the plaintiff's Wage Act claim alleging the defendant

had failed to pay her about $40,000 in commissions for loans in her pipeline that had not closed as of the date she was terminated. In doing so, the court noted that the Wage Act is limited to commissions "that are definitely determined and have become due and payable." Relying on the terms of the commission plan, Judge Woodlock wrote:

> I reject any suggestion that Mrs. Scalli is owed, pursuant to the Wage Act, an amount equivalent to the commissions she would have received for the loans in her pipeline when she was terminated had she in fact seen them through their closing. Such potential commissions cannot be considered "definitely determined" and "due and payable" because the uncontested testimony is that Citizens' loan officers only receive commission on loans when they are closed.

*Id.* at *50-51.[2]

In Count V, Adedamola alleges that, under the terms of the 2010 BDM Commission Plan, he earned a $420,000 commission and a $140,000 bonus because he obtained a Letter of Intent signed by the State Department. (SUF ¶¶ 33-34). However, under the express terms of the BDM Commission Plan, a BDM does not earn a commission until the BDM obtains a signed contract that definitely determines the Gross Margin ("GM") for the deal. During his deposition, Adedamola admitted:

- The Letter of Intent was merely an agreement to negotiate exclusively for a set time period, in hopes of reaching agreement over the financial terms of the multi-year deal (the "State Department Deal") and then executing a contract (SUF ¶ 35);

- The Letter of Intent did not contain any of the financial terms for the State Department Deal, nor did it definitely determine the GM (SUF ¶ 39, 42, 48);

---

[2]    In a similar recent case, Judge Stearns denied a claim for commissions because the plaintiff based his claim on what the plaintiff believed should have been the plan—not on the defendant's actual commission plan. *Trent v. ADT Security Services, Inc.*, 2013 U.S. Dist. LEXIS 119356, at *24-25 (D. Mass. Aug. 22, 2013)).

- The parties had not executed a contract over the financial terms of the State Department Deal while Adedamola was employed as a BDM and covered by the BDM Commission Plan (SUF ¶ 43);

- Constellation promoted Adedamola to VP on December 20, 2010 (SUF ¶ 1);

- Adedamola knew he would not be covered by the BDM Commission Plan if he accepted the promotion to VP (SUF ¶ 55);

- Constellation and the State Department did not reach agreement on the financial terms of the State Department Deal until March 23, 2011 (SUF ¶ 48);

- The GM for the State Department Deal was not determined until the parties executed the March 23, 2011 contract (SUF ¶ 48);

- On March 23, 2011, when Constellation and the State Department executed the contract and the GM was determined, Adedamola was employed as a VP—not a BDM—and thus was not eligible for a commission or a bonus under the BDM Commission Plan (SUF ¶ 49);

- By e-mail dated March 7, 2012, Adedamola expressly admitted that, when he accepted the promotion to VP, he knew he would not receive a commission or a bonus for the State Department Deal under the BDM Commission Plan, because the contract had not been signed while he was a BDM (SUF ¶ 53).

Here, as in *Scalli*, the undisputed facts prove that neither the commission nor the bonus at issue were "definitely determined" or "due and payable" to Adedamola under the Wage Act.

### b. Under The BDM Commission Plan, Constellation Does Not Guarantee Bonuses

Massachusetts state and federal courts have consistently held that discretionary bonuses are not "wages" under the Wage Act. *See Weems v. Citigroup, Inc.*, 900 N.E.2d 89, 94 (Mass.

2009) (holding that discretionary bonuses do not qualify as "wages"). A bonus based on company performance is discretionary and thus "outside the scope of the Wage Act." *Roche v. Morgan Collection, Inc*., 882 F. Supp. 2d 247, 255 (D. Mass. 2012).

As in *Roche,* under the BDM Commission Plan, bonuses are based on "company performance" and "individual performance." (SUF ¶ 29). Adedamola admitted Constellation retained the unilateral right to decide whether to grant a bonus or not. (SUF ¶ 29). Based on these undisputed facts, the bonus at issue was "discretionary" and therefore outside the scope of the Wage Act.

For these reasons, Constellation respectfully requests that this Court grant summary judgment regarding Adedamola's Wage Act claims in Count V.

### 2. **Counts I and II – Race Discrimination In Compensation Claims**

#### a. **Constellation Refused To Pay Adedamola A Commission And A Bonus For Legitimate Reasons**

In Counts I and II, Adedamola claims Constellation failed to pay him the commission and bonus at issue because of his race. (SUF ¶ 21). For the reasons detailed in Section II(C)(1)(a) above, Adedamola did not earn a commission or a bonus for obtaining the Letter of Intent. Accordingly, Constellation did not pay Adedamola his alleged commission or bonus based on legitimate business reasons unrelated to Adedamola's race.

For the above reasons, Constellation respectfully requests that this Court grant summary judgment on Adedamola's claims for unpaid compensation in Counts I and II.

### b. Adedamola Has No Facts To Support His
### Claim That Race Was A Factor In This Decision

Here too, Adedamola admitted he has no facts to support his race claim related to his compensation. (SUF ¶ 64). Accordingly, Adedamola failed to carry his burden to present evidence in support of this claim. *See Bennett v. Boston*, 1988 U.S. Dist. LEXIS 5485, at *9-10.

### c. Hutchinson And Kagan Decided Not To
### Grant Adedamola The Compensation At Issue

As noted above in Section II(B)(3), U.S. District Courts in the First Circuit recognize a strong presumption of nondiscrimination when the "same actor" makes and adverse decision within a short time following a positive employment actions. *See Mendez-Martinez*, 851 F. Supp. 2d at 348 n.8.

Hutchinson and Kagan made the decision that Adedamola did not earn any commission or bonus for obtaining the Letter of Intent. (SUF ¶ 63). Hutchinson and Kagan both knew Adedamola's race before they made the decision to promote Adedamola to VP. (SUF ¶ 11). In addition, Hutchinson and Kagan had legitimate business reasons to deny Adedamola the compensation at issue. Based on the "same actor" inference, there is a strong presumption that Hutchinson and Kagan did not consider Adedamola's race as a factor in this compensation decision.

For these reasons, Constellation respectfully requests that this Court grant summary judgment on Adedamola's race discrimination claims regarding compensation in Counts I and II.

### 3. Count VII – Good Faith And Fair Dealing

Adedamola admitted that his only claim in Count VII is for the commission and bonus he purportedly earned as a BDM for obtaining the Letter of Intent. (SUF ¶ 23). Adedamola claims Constellation realized a benefit, first by delaying this payment from early 2011 (when it was

allegedly due under the BDM Commission Plan) until 2012, and then by refusing to pay it entirely. (Complaint ("Compl.") ¶¶ 48, 49).

### a. Adedamola Did Not Earn The Compensation

To establish a good faith and fair dealing claim of this nature, an employee has the initial burden to show he/she was deprived of an "earned commission." In *King v. Mannesmann Tally Corp.*, 847 F.2d 907, 908 (1st Cir. 1988), the defendant terminated the plaintiff and refused to pay him the commission at issue. In response to the plaintiff's good faith and fair dealing claim, the defendant presented undisputed facts that the plaintiff had not earned the commission under the applicable commission plan. Relying on the express terms of the applicable commission plan, the First Circuit affirmed summary judgment for the defendant, reasoning:

> Pursuant to the appellant's compensation plan, however, he was not entitled to receive a commission for having succeeded, either through his sole efforts or, as apparently happened here, as part of his employer's team, in getting the appellee named as Digital's vendor. . . . The appellant essentially is seeking recovery for the loss of future income which is insufficiently reflective of his past services; *i.e.*, he has failed to show that the commissions were *earned*, even though not yet payable at the time of his termination.

(Emphasis in original). As noted in Section II(C)(1)(a) above, the undisputed facts show that Adedamola did not earn the commission or bonus at issue under the express terms of the BDM Commission Plan. Accordingly, there is no factual or legal basis for Adedamola's breach of the implied covenant of good faith and fair dealing claim in Count VII.

For these reasons, Constellation respectfully requests that this Court grant summary judgment and dismiss Adedamola's claim in Count VII.

4.  <u>Count VIII – Misrepresentation Claim</u>

a.  **The Alleged Misrepresentation**
**Is Too Vague As A Matter Of Law**

To be actionable, an alleged misrepresentation must be sufficiently specific. In *Masingill v. EMC Corp.*, 870 N.E.2d 81, 87 (Mass. 2007), the defendant promised the plaintiff that the company would "make [her] whole" if she lost benefits in the event the company was acquired. The Supreme Judicial Court of Massachusetts held that this alleged misrepresentation was too vague to support a claim, explaining:

> The evidence does not offer any definition or further explanation of the term "make you whole" sufficiently precise to determine what the representation meant. *See Hogan v. Riemer,* 35 Mass. App. Ct. 360, 365, 619 N.E.2d 984 (1993) (vague "[s]tatements of expectation" do not support cause of action for fraud).

*Id.* at 91. In Count VIII, Adedamola bases his misrepresentation claim exclusively on Hutchinson's alleged representation that Adedamola's "efforts on the State Department deal would be reflected in [his] 2012 incentive payout." (SUF ¶¶ 20, 24, 70). Here, as in *Masingill*, Hutchinson's alleged statement does not precisely articulate any promise about how the efforts would be "reflected" in the payout.  Accordingly, this alleged statement is too vague to support a claim for misrepresentation.

b.  **Adedamola Admits Hutchinson Was**
**Being Honest When He Made The Statement**

Under Massachusetts law, a plaintiff must prove that "the defendant made a false representation of material fact with knowledge of its falsity. . . ." *Trent Partners and Assoc., Inc. v. Digital Equipment Corp.*, 120 F. Supp. 2d 84, 108-09 (D. Mass. 1999).  Adedamola admits Hutchinson made the alleged misrepresentation at issue honestly, without knowledge of its

falsity. (SUF ¶ 72). Therefore, as in *Trent,* Adedamola's misrepresentation claim has no basis in fact or law.

For the above reasons, Constellation respectfully requests that this Court grant summary judgment on Adedamola's misrepresentation claim in Count VIII.

### D.  Counts I and II – Termination Based On Race Claims

#### 1.  Constellation Terminated Adedamola Based On Legitimate Business Reasons

An employer may defeat a claim of discrimination by showing it terminated the plaintiff for a legitimate, non-discriminatory business reason. In *Straughn v. Delta Air Lines, Inc*., 250 F.3d 23, 33-34 (1st. Cir. 2001), the First Circuit affirmed the dismissal of the plaintiff's race discrimination claim, because the plaintiff's repeated dishonesty was a legitimate, non-discriminatory reason for the defendant to terminate her employment:

> Delta proffered competent evidence that Straughn was dismissed due to her dishonesty in repeatedly attempting to mislead a supervisor regarding her wrongful retention of workers' compensation benefits in violation of Delta policy.

Adedamola admitted he failed to pay his overdue corporate credit card balance for over 130 days. (SUF ¶ 88). By e-mail, Adedamola repeatedly promised Hutchinson he would pay the overdue balance. (SUF ¶¶ 75, 80). On February 27, 2012, Adedamola gave Hutchinson his word that he had paid the account balance in full on February 25, 2012. (SUF ¶ 85). On the morning of March 6, 2012, the Corporate Card Department reported to Hutchinson that no payment had been posted on Adedamola's Citibank account. (SUF ¶ 87). Hutchinson immediately asked Adedamola to show proof that he had paid the balance on February 25, 2012. (SUF ¶ 89). Adedamola produced confirmation that he wired payment to his account on March 4, 2012—not February 25, 2012. (SUF ¶ 92).

14

According to Hutchinson, Adedamola's admission proved he had lied to Hutchinson about having paid the overdue balance on February 25th by certified funds. (SUF ¶¶ 93, 94). Hutchinson testified that this evidence confirmed the opinion of several other executives who had previously advised Hutchinson that Adedamola was untrustworthy. (SUF ¶ 101). On March 6, 2012, Hutchinson recommended that Constellation terminate Adedamola because he failed to pay his corporate credit card expenses and repeatedly lied about having done so. (SUF ¶¶ 95, 97).

Mark Huston, Senior VP and Head of Retail Energy ("Huston")—Hutchinson's boss' boss—pressed Hutchinson to merely demote Adedamola. (SUF ¶ 102). Hutchinson was initially willing to defer to his superior, but he ultimately insisted on termination. (SUF ¶¶ 103, 105). Based on Hutchinson's recommendation, Huston acquiesced, and Constellation terminated Adedamola's employment effective March 27, 2012. (SUF ¶¶ 106, 107).

Based on these undisputed facts, Constellation terminated Adedamola for legitimate business reasons unrelated to his race.

### 2. Hutchinson Is The Same Race As Adedamola

Courts in the First Circuit have repeatedly dismissed discrimination claims where the decision-maker occupied the same protected class as the plaintiff. *See, e.g.*, *LeBlanc v. Great American Ins. Co.*, 6 F.3d 836, 847 (1st Cir. 1993).

Both Adedamola and Hutchinson are African-American. (SUF ¶¶ 2, 14). Based on this undisputed fact, it is highly unlikely that Hutchinson would view Adedamola's race as a negative factor in any employment decision.

### 3. The Same Group Of People
### <u>Promoted And Terminated Adedamola</u>

When the same person promotes an employee, knowing his race, and subsequently decides to terminate that employee, a strong presumption exists that race was not a factor in either decision. *See Mendez-Martinez*, 851 F. Supp. 2d at 348 n.8; *see also Blackwell v. Bob Evans Farms*, 1996 U.S. Dist. LEXIS 10044, at *20-21 (N.D. Ill. July 17, 1996) (dismissing discrimination claim, citing *LeBlanc*, where the same person who terminated the plaintiff also promoted the plaintiff and "continually aided in [the plaintiff's] advancement through Bob Evans' managerial ranks").

During September 2011, Hutchinson urged Adedamola to apply for the VP position and recommended him for the promotion. (SUF ¶ 9). Adedamola admitted Kagan and Huston approved Hutchinson's recommendation. (SUF ¶ 10). On December 20, 2010, Hutchinson, Kagan and Huston promoted Adedamola to VP. (SUF ¶ 1). In March 2012, roughly fifteen months later, Hutchinson insisted that Constellation terminate Adedamola's employment, and Kagan and Huston eventually acquiesced.  (SUF ¶¶ 105-107).

These undisputed facts undercut Adedamola's claim that Hutchinson, Kagan or Huston considered Adedamola's race as a negative factor in their collective decisions to promote Adedamola to the VP position or to terminate Adedamola's employment. For these reasons, Constellation respectfully requests that this Court grant summary judgment and dismiss Adedamola's race-based termination claims in Counts I and II.

### E. Counts III, IV And VI - Retaliatory
### <u>Termination For Engaging In Protected Activity</u>

### 1. Constellation Had Legitimate
### <u>Reasons To Terminate Adedamola</u>

16

As detailed more fully in Section II(D)(1) above, Constellation terminated Adedamola for failing to pay his corporate credit card for over 130 days and repeatedly lying to Hutchinson about having paid the balance. Adedamola admitted all the facts on which Constellation relied when it decided to terminate Adedamola's employment. Accordingly, Constellation terminated Adedamola's employment for legitimate business reasons unrelated to his alleged protected activity.

### 2. Hutchinson Recommended Termination Before Adedamola Engaged In Protected Activity

To support a retaliation claim, a plaintiff must at least show the employer made the adverse employment decision after the plaintiff engaged in the alleged protected activity. In *Pearson v. Mass. Bay Transp. Auth*., 723 F.3d 36, 42 (1st Cir. 2013), the First Circuit affirmed the dismissal of the plaintiff's retaliation claim, because the plaintiff's supervisor recommended plaintiff's employment be terminated before the plaintiff engaged in the protected activity. In doing so, the First Circuit observed:

> Causation moves forward, not backwards, and no protected conduct after an adverse employment action can serve as the predicate for a retaliation claim. *See, e.g., Sullivan v. Raytheon Co*., 262 F.3d 41, 49 (1st Cir. 2001) (rejecting a retaliation claim under Chapter 151B "[b]ecause [the plaintiff's] protected action — filing a charge of discrimination — occurred after the adverse employment action"). . . . (Citation omitted).

Adedamola admitted that he first engaged in protected activity when he submitted a race discrimination complaint by e-mail dated March 7, 2012. (SUF ¶¶ 110, 111).  However, by e-mail dated March 6, 2012—the day before Adedamola engaged in the alleged protected activity—Hutchinson had already recommended that Constellation terminate Adedamola's employment. (SUF ¶ 95).

17

Here, as in *Pearson,* Kagan and Huston had not approved Hutchinson's recommendation before Adedamola engaged in the protected activity.  However, even after Adedamola submitted the complaints at issue, Huston evenhandedly evaluated whether to demote Adedamola because of his ability to sell. (SUF ¶ 102). Hutchinson was willing to support his superior's preference to demote Adedamola, but Hutchinson consistently made it clear that he did not agree with the decision.  (SUF ¶ 103).  Realizing that Hutchinson was Adedamola's direct supervisor, Huston ultimately acquiesced to Hutchinson's March 6th recommendation to terminate Adedamola's employment. Hutchinson could not have known about Adedamola's March 7th complaint when Hutchinson first insisted that Constellation terminate Adedamola due to his undisputed lack of integrity.  These undisputed facts prove Adedamola's protected activity could not have been a factor in this decision.

### 3.   Adedamola Did Not Engage <u>In Protected Activity Under Title VII</u>

An employee does not engage in protected activity under Title VII simply by voicing general complaints about perceived unfairness.  Instead, in his/her complaint, a plaintiff must identify some form of discrimination based on a protected trait. *See Walker v. City of Holyoke*, 523 F. Supp. 2d 86, 113 (D. Mass. 2007) (a protected activity is an act challenging an employment practice as unlawful under anti-discrimination statutes). In *Williams v. United Techs*., 2013 U.S. Dist. LEXIS 53891, at *2 (D. Mass. April 12, 2013), the plaintiff alleged his supervisor retaliated against him "for his complaints about the company's 'unfair and prejudi[cial] treatment. . .'" The court granted the defendant's motion for summary judgment, finding the plaintiff did not engage in protected activity under Title VII. The court reasoned that, in his complaint, the plaintiff had not identified any prejudice based on a protected trait.  *Id.* (citations omitted).

18

Adedamola claims he intended to imply race discrimination in his March 7th and March 15th e-mails by stating: (1) "I hope there is no bias involved"; (2) "I hope and pray there is no systemic methodology to this"; and (3) "The only satisfaction for me to change my mind will be a review of these payouts that shows me the discretion was blind and not based on other hidden factors." (SUF ¶ 113, 114, 115). However, Adedamola's vague and ambiguous statements fail to identify any complaint of race discrimination.

Accordingly, Adedamola's March 7th and March 15th e-mails do not constitute protected activity under Title VII.

### 4.   Adedamola Has No Facts To Support His Retaliation Claim

As noted above, a plaintiff has the burden to produce facts in support of a Title VII claim. In *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2534, 186 L. Ed. 2d 503 (2013), the U.S. Supreme Court established that an employee must show "that his or her protected activity was a but-for cause of the alleged adverse action by the employer." Adedamola admitted he has no facts to support his belief that any of the decision-makers considered his protected activity as a factor in their decision to terminate his employment—much less that his protected activity was the "but-for" factor in their decision. (SUF ¶ 125).

For these reasons, Constellation respectfully requests that this Court grant summary judgment and dismiss Counts III, IV and VI.

## IV.  CONCLUSION

As detailed above, there is no factual or legal basis for any of the claims in the Complaint. Accordingly, Constellation respectfully requests that this Court grant summary judgment and dismiss the Complaint with prejudice.

Dated:  July 14, 2014                    Respectfully submitted,


                                          CONSTELLATION NEWENERGY, INC.
                                          **By its Attorneys**

                                          /s/  Michael N. Petkovich
                                          Michael N. Petkovich
                                          *Admitted Pro Hac Vice*
                                          Jackson Lewis P.C.
                                          10701 Parkridge Boulevard,
                                          Suite 300
                                          Reston, VA, 20191
                                          Tel: (703) 483-8300
                                          Fax: (703) 483-8301
                                          petkovim@jacksonlewis.com

                                          /s/  Matthew D. Freeman
                                          Matthew D. Freeman (BBO no. 664355)
                                          Jackson Lewis P.C.
                                          75 Park Plaza
                                          Boston, MA 02116
                                          Tel: 617-367-0025
                                          Fax: 617-367-2155
                                          freeman@jacksonlewis.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 14, 2014, I electronically filed the foregoing document with the Clerk of the Court, using the CM/ECF system.  The CM/ECF system will provide service of such filing via Notice of Filing to all interested parties.

<u>/s/ Michael N. Petkovich</u>
JACKSON LEWIS P.C.